Filed 12/13/13  In re Jonathan L. CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re JONATHAN L. et al., Persons Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, | F067253 |
| Plaintiff and Respondent, | (Super. Ct. Nos. JJV066111A, JJV066111B & JJV066111C) |
| v. | |
| HEATHER L. et al., | **O P I N I O N** |
| Defendants and Appellants. | |

**THE COURT**[*]

APPEAL from orders of the Superior Court of Tulare County.  Jennifer Conn Shirk, Judge.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Heather L.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant Neil S.

Kathleen Bales-Lange, County Counsel, and John A. Rozum and Carol Helding, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Kane, J., and Peña, J.

Heather L. appeals from an order terminating her parental rights under Welfare and Institutions Code section 366.26[1] as to her seven-year-old son, Jonathan, two-year-old son, Braden, and one-year-old daughter, Nicole. Heather contends the juvenile court erred in declining to apply the exceptions to adoption contained in section 366.26, subdivision (c)(1)(B)(i) and (v), hereafter referred to as the "beneficial relationship" and "sibling relationship" exceptions respectively. Neil S. joins in Heather's argument as to his children, Braden and Nicole. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

These dependency proceedings originated in Los Angeles County in July 2011 after Heather was pulled over by a California Highway Patrol officer for driving erratically on the freeway with then five-month-old Braden in the car. Heather's pupils were constricted and she had track marks on her arm. She also had a syringe cap and a baggy with drug residue in the car. Heather failed the field sobriety test and the officer arrested her for driving and being under the influence of methamphetamine and child endangerment. The Los Angeles County Department of Children and Family Services (department) took Braden and then four-year-old Jonathan into protective custody and placed them with their maternal grandparents, Mr. and Mrs. G., in Visalia.

This was not the first time the department intervened to protect Jonathan. In November 2006, newborn Jonathan tested positive for marijuana and benzodiazepine. Heather was actively using drugs, including cocaine, and had a felony conviction for possession of a controlled substance. In January 2007, the department removed Jonathan from Heather's custody and placed him with his maternal aunt and uncle. The Los Angeles County Juvenile Court provided Heather and Todd, Jonathan's father,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

reunification services that included drug treatment. However, Heather did not comply and she visited Jonathan sporadically. The juvenile court terminated Heather and Todd's reunification services and set a section 366.26 hearing. Prior to the hearing, Heather successfully petitioned for reinstatement of reunification services. (§ 388.) In November 2009, the juvenile court terminated its dependency jurisdiction.

In September 2011, the Los Angeles County Juvenile Court exercised its dependency jurisdiction over Jonathan and Braden and ordered Heather and Neil to attend parenting classes, participate in individual counseling and submit to random drug testing. The court also ordered Heather to participate in drug counseling.[2] However, Heather and Neil did not comply. From July to November 2011, they failed to show for a majority of their drug tests and Heather tested positive multiple times for hydrocodone which she said she took for migraines. She produced a prescription for hydrocodone filled in early September 2011, but it was only for 20 tablets and was not refillable. During this time frame, Heather and Neil did not consistently visit the children even though Mrs. G., Heather's mother, was willing to meet them halfway. In late November 2011, Heather and Neil moved to Visalia to be closer to the children.

In March 2012, the juvenile court conducted the six-month review hearing, found Heather and Neil to be in partial compliance and continued reunification services to the 12-month review hearing. The court also ordered the case transferred to Tulare County. By that time, Neil was employed full time and Heather was several months pregnant with Nicole. Heather had completed six weeks of intensive drug treatment and was in aftercare. She and Neil visited the children twice a week and were drug testing.

---

[2]     The juvenile court ordered reunification services for Todd but he did not appear in the proceedings.

3

In April 2012, the Tulare County Juvenile Court (the juvenile court) accepted the case and, on the recommendation of the Tulare County Health and Human Services Agency (agency), ordered Heather and Neil to complete parenting classes and submit to random drug testing. The court also ordered Heather to complete substance abuse treatment and Neil to complete an alcohol and drug assessment and follow any recommended treatment. The court granted the agency discretion to advance Heather and Neil to unsupervised visitation and set the 12-month review hearing for August 2012.[3]

During the first two weeks of May 2012, Heather, then approximately 26 weeks gestation, was evaluated in the emergency room three times for nausea, vomiting, abdominal pain and severe anxiety. The examining physician suspected that Heather was seeking drugs but could not determine whether she had a mental illness she was self-medicating or whether her symptoms were drug induced. The physician diagnosed her with bipolar disorder with mania and substance abuse in remission and referred her for a psychiatric evaluation. In mid-July 2012, Heather reported that she had taken 15 days worth of her prescribed Ativan in two days and had used other medications to alleviate her nausea and vomiting.

In July 2012, Heather was admitted for psychiatric treatment. Upon her discharge, she was transferred to Mothering Heights, a perinatal inpatient drug treatment program. That same month, Mr. and Mrs. G. requested permanent placement of Jonathan and Braden. In separate letters, they stated they no longer believed Heather and Neil could safely parent the children.

In mid-August 2012, Heather gave birth to Nicole while residing at Mothering Heights. The agency did not detain Nicole but filed a dependency petition on her behalf,

---

[3] Todd chose not to participate in reunification services and supported Jonathan's adoption by relatives.

4

alleging Heather abused prescription medication during her pregnancy, including taking 15 days of Ativan in two days. It also alleged Heather's substance abuse and mental illness placed Nicole at a substantial risk of harm. Heather was allowed to return to Mothering Heights with Nicole.

In August 2012, the agency filed its report recommending the juvenile court terminate Heather and Neil's reunification services for noncompliance. The agency cited Heather's abuse of her prescription medication, Neil's positive drug test result for methamphetamine in June 2012, and their failure to attend multiple scheduled visits with the children.

In August 2012, the juvenile court agreed that Nicole could remain with Heather in Mothering Heights as long as Heather did not take her from the facility except for medical appointments and under supervision. The court set a September 2012 jurisdictional hearing as to Nicole and a continued 12-month review hearing the same month for Jonathan and Braden. The hearings were continued to October 2012 and set for the same day.

In October 2012, the juvenile court convened a combined contested jurisdictional and 12-month review hearing. Heather testified during the jurisdictional phase and admitted exceeding her dose of Ativan but denied taking 15 days worth of Ativan in two days. She said she was prescribed one Ativan every eight hours for severe anxiety but took two every eight hours. She testified she suffered from anxiety and depression while pregnant with Nicole, but denied being mentally ill and said she was no longer taking psychotropic medication.

Following Heather's testimony and argument, the juvenile court amended and sustained the petition. The court also informed the parties it intended to detain Nicole but allow her to remain in Heather's custody while Heather was in Mothering Heights. The court continued the dispositional hearing and the 12-month review hearing for two days.

5

Heather testified at the continued hearing. She said she was participating in substance abuse and parenting classes, individual and group therapy and weekly Narcotics/Alcoholics Anonymous meetings at Mothering Heights. She expected to complete the Mothering Heights program in January 2013, after which she intended to live in a sober living environment with Nicole.

At the conclusion of the hearing, the juvenile court terminated Heather's reunification services as to Jonathan and Braden and Neil's services as to Braden. The juvenile court also ordered Nicole removed from Heather and Neil's custody and denied them reunification services under section 361.5, subdivision (b)(10) and (13). The juvenile court also ordered visitation for Heather and Neil as to all three children three times a week for two hours and set a section 366.26 hearing for January 2013. Heather and Neil did not challenge the juvenile court's setting order by writ petition. (Cal. Rules of Court, rules 8.450, 8.452.)

Following the hearing, the agency placed Nicole with prospective adoptive parents who were friends of Mr. and Mrs. G.

In its report for the section 366.26 hearing, the agency proposed adoption as the permanent plan for all three children. The agency reported Mr. and Mrs. G. and Nicole's adoptive parents were strongly committed to adoption, had a good relationship and planned to maintain the sibling relationships.

In January 2013, prior to the section 366.26 hearing, Heather filed a section 388 petition asking the juvenile court to provide her reunification services for all three children. She asserted her circumstances changed subsequent to the court's prior orders denying and terminating her services in that she completed the Mothering Heights treatment program and a parenting program, completed a mental health assessment and was deemed not to need mental health treatment, maintained sobriety since July 2012 and continued to drug test with negative results, and regularly visited the children. She also

6

asserted that reunification would serve the children's best interests as they were bonded to her as she was to them.

Neil also filed a section 388 petition in January 2013, claiming he completed inpatient treatment and one of four required components for a parenting program. In addition, he stated he was participating in aftercare and testing negative for drugs. Neil cited his "strong bond" with the children as a reason reunification would serve the children's best interests.

In January 2013, on the date set for the section 366.26 hearing, the juvenile court continued the hearing until February 2013 and set a hearing on the section 388 petitions for the same date. Heather testified to her progress as stated in her section 388 petition, adding that she was participating in an aftercare program she expected to complete in mid-July 2013. She said she and Neil lived in an apartment and he supported them financially.

Neil testified he completed an inpatient drug treatment program and was participating in aftercare. He expected to complete aftercare in December 2013. He claimed August 1, 2012, as his sobriety date.

Following testimony, the juvenile court requested briefing and in April 2013, issued a written ruling denying Heather and Neil's section 388 petitions. The court also terminated Heather, Neil and Todd's parental rights. In doing so, the juvenile court found that Heather and Neil visited the children and acknowledged that the children appeared to benefit from the visits. However, the juvenile court also found that Heather and Neil had not presented any evidence other than their own beliefs the children would be harmed if their "minimal [parent-child] relationship" was terminated. Consequently, the court found there was insufficient evidence to determine that severance of the parent-child relationship would be detrimental to the children.

This appeal ensued.

7

## DISCUSSION

Heather and Neil (appellants) contend substantial evidence supported a finding termination of their parental rights would be detrimental to the children under either of two exceptions to adoption ─ the beneficial relationship and sibling relationship exceptions found in section 366.26, subdivision (c)(1)(B)(i) and (v) respectively. We disagree.

Once a dependency case reaches the permanency planning stage, the statutory presumption is that termination is in an adoptable child's best interests and, therefore, not detrimental. (§ 366.26, subd. (b); *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-1344.) It is the parent's burden to show that termination would be detrimental under one of the statutory exceptions. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809.)

Section 366.26, subdivision (c)(1)(B)(i), the beneficial relationship exception, bars termination of parental rights if termination would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

In this case, it is undisputed appellants regularly visited the children. The only question is whether appellants established a factual foundation to support a finding the beneficial relationship exception applied. In order to do so, they had to show that the children had such a substantial, positive emotional attachment to them and that severing the relationship would greatly harm the children. When such an attachment exists, "the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

On review, we determine whether the juvenile court abused its discretion in rejecting a detriment claim and terminating parental rights. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.) To conclude there was an abuse of discretion, the proof offered must be uncontradicted and unimpeached so that discretion could be exercised in

8

only one way, compelling a finding in the appellant's favor as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

Appellants argue they shared "a substantial, positive, emotional attachment" with the children from which the juvenile court should have inferred that severing those relationships would be detrimental. However, the record does not evidence such an attachment. According to the record, the children enjoyed visiting appellants and were affectionate with them. However, the children did not hesitate to separate from appellants and were happy to see their caretakers. Further, appellants offered no evidence the children would be harmed if the relationship they had was severed and no such evidence can be gleaned from the record. We conclude therefore the juvenile court properly exercised its discretion in determining the beneficial relationship exception did not apply in this case.

We also conclude the juvenile court properly determined the sibling relationship exception did not apply. Section 366.26, subdivision (c)(1)(B)(v), the sibling relationship exception, bars termination of parental rights if termination would be detrimental to the child because

> "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."

In this case, terminating appellants' parental rights does not interfere with Jonathan and Braden's sibling relationship because they will be raised together by Mr. and Mrs. G. Nor does it interfere with Nicole's relationship with her brothers because her adoptive parents intend to raise her with them. Even if that does not occur, adoption

9

is still in Nicole's best interest because she was not raised with her brothers and is too young to have developed a close and strong bond with them.

We find no error in the juvenile court's rejection of the beneficial and sibling relationship exceptions and its orders terminating appellants' parental rights.

## DISPOSITION

The juvenile court's orders terminating appellants' parental rights are affirmed.